# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRIS FOLKERS,

   *Plaintiff,*

vs.              Case No. 14-CV-2515-EFM-JPO

AARON SIMMONS, *et al.*,

   *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Chris Folkers filed this suit *pro se* alleging violations of his rights under the Kansas and United States Constitutions, federal and state statutes, and state tort law. Plaintiff asserts claims against Defendants Aaron Simmons, John Harvell, Elizabeth Boldt, [First Name Unknown] Brokaw, three unnamed male law enforcement officers, and one unnamed woman in their official and individual capacities. Before the Court is Defendants Simmons, Harvell, Boldt, and Brokaw's Motion to Dismiss (Doc. 5). Because the Court finds that Plaintiff has failed to state a claim under which relief may be granted, the Court grants Defendants' motion. In light of this decision, the Court also denies as moot Plaintiff's Motion to Remand (Doc. 9) and Motion for Review of Magistrate's Orders (Doc. 17).

# I.        Factual and Procedural Background

Plaintiff is a resident of the State of Kansas.  On April 26, 2014, Defendant Simmons, a law enforcement officer, conducted a traffic stop and issued Plaintiff a Kansas Uniform Complaint and Notice to Appear for exceeding the speed limit while operating a vehicle in the City of Merriam, Kansas.  The Notice to Appear required Plaintiff's appearance in the Municipal Court of Merriam, Kansas.[1]

On June 26, 2014, Plaintiff filed a Motion to Strike/Dismiss the speeding ticket issued by Officer Simmons challenging the subject matter jurisdiction of the City and the Municipal Court. Two weeks later, on July 10, 2014, Plaintiff appeared before Municipal Court Judge Harvell at the City of Merriam Municipal Court.  Judge Harvell indicated that he had read Plaintiff's Motion to Strike/Dismiss and that he was denying it.  Plaintiff argued that the motion was unopposed by the City, whereupon Defendant Boldt, a City of Merriam prosecutor, stated that she had not received a copy of it.  After this exchange, Judge Harvell denied the motion, entered a plea of not guilty on Plaintiff's behalf, and set a trial date of September 18, 2014.

On September 15, 2014, Plaintiff filed a renewed motion to dismiss for lack of subject matter jurisdiction, hand-delivering the motion to Defendant Boldt and Defendant Simmons by leaving it with the City Clerk in a sealed envelope. According to Plaintiff, the motion states a claim of abuse of legal process under Kansas law—a criminal violation relating back to the April 26, 2014, Notice to Appear.

Plaintiff appeared at the Merriam Municipal Court for his trial on September 18, 2014. After Judge Harvell heard thirty to forty minutes of other matters, Plaintiff spoke out under his

---

[1] Plaintiff's complaint does not specify whether he appeared at this hearing.

breath.  Plaintiff then claims that he noticed Defendant Simmons in the room, in the first row, near Defendant Boldt's chair and desk.  Plaintiff saw Defendants Simmons and Boldt converse and then saw Defendant Boldt go to Judge Harvell's chair in the center of the room and spoke with him about the motion Plaintiff filed on September 15, 2014.

After these conversations, Defendant Simmons left his seat at the front of the courtroom and went to the back of the room to talk with Defendant Brokaw, a Merriam City police officer. Defendant Brokaw then approached Plaintiff and asked to speak with him outside the courtroom. Once outside, Brokaw indicated that a woman sitting in the front of the room overheard him say something about wanting to bomb the court.  Plaintiff denied making this statement.

At some point, two other law enforcement officers employed by the City of Merriam appeared behind Plaintiff.  Defendant Brokaw stated that he was going to search Plaintiff, and Plaintiff responded that he did not consent.  Defendant Brokaw placed Plaintiff in handcuffs while the two other officers restrained him.  Defendant Brokaw then searched Plaintiff's pockets, finding keys, a wallet, money, and a digital recorder.

Plaintiff claims that after the search he was returned to the courtroom in shackles where Judge Harvell held him in contempt of court " 'for failure to stand' " and set a bond of $500.00.[2] Judge Harvell also continued Plaintiff's trial to September 23, 2014.

Defendant Brokaw then took Plaintiff downstairs, and Plaintiff asked him for a piece of paper and a pen to write a writ of habeas corpus.  Defendant Brokaw did not grant Plaintiff's request.   Another unnamed Merriam Police Officer drove Plaintiff to the Johnson County

---

[2] Complaint, Doc. 1-1, p. 5.

Detention Center in Olathe, Kansas, where he spent over fifteen hours in an eight-foot by ten-foot room before being released.

On September 22, 2014, Plaintiff filed suit against Defendants in the District Court of Johnson County, Kansas.  Plaintiff's complaint sets forth sixteen counts against Defendants. Plaintiff's claims consist of the following: "willful violations of Kansas Constitution 'Bill of Rights' sections 1, 3, 8, 10, 15, and 20, Kansas criminal statutes and U.S. Constitution amendments 1, 4, 5, 6, 10 and 14 and Federal criminal statutes," willful abuse of legal process, conspiracy to abuse the legal process, "tort conversion of Kansas and U.S. Constitutional rights," "violation of 15 USC (FDCPA)," "Civil RICO," and state law tort claims of battery, assault, false imprisonment, gross negligence, negligent malpractice, failure in duty of care, and intentional infliction of emotional distress.[3]  Defendants Harvell, Simmons, Boldt, and Brokaw removed the case to this Court on October 9, 2014.  That same day, Defendants filed a Motion to Dismiss, which is now before the Court.

## II.      Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[4]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible if the plaintiff pleads facts sufficient for the

---

[3] Complaint, Doc. 1-1, p. 1.

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

court to reasonably infer that the defendant is liable for the alleged misconduct.[6]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[7]   Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint but need not afford such a presumption to legal conclusions.[8]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[9]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[10]

The pleadings of a *pro se* plaintiff are to be liberally construed.[11]  But, the Court is not an advocate and will not allege additional facts or assert alternative legal theories for the *pro se* party.[12]  To avoid dismissal, the *pro se* complaint "must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the

---

[6] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[8] *Iqbal*, 556 U.S. at 678-79.

[9] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[10] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[11] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[12] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

elements of a cause of action . . . [and] must allege sufficient facts to state a claim which is plausible—rather than merely conceivable—on its face."[13]

### III.    Analysis

**A.    Plaintiff's Complaint Fails to State a Claim under Rule 12(b)(6).**

Plaintiff's complaint is difficult to understand.  Although it sets forth sixteen counts against Defendants, these counts contain a mishmash of statements concerning Defendants' alleged conduct and only vaguely refer to the legal theories under which he is asserting his claims.  Plaintiff's introductory paragraph asserts that he is alleging violations of federal and state criminal statutes, 15 U.S.C., 42 U.S.C. §§ 1983, 1985, 1986, and 1966, and 18 U.S.C., as well as the Kansas and United States Constitutions.  But, even a liberal reading of Plaintiff's complaint fails to reveal facts supporting these legal theories and fails to identify a specific violation under these legal theories. The Court will address each of Plaintiff's claims below, although not necessarily in the order in which they appear in the complaint.

### 1.  Violations of the Kansas and United States Constitutions

In Count 1, Plaintiff asserts that Defendants Simmons, Harvell, Boldt, Brokaw, and the three unnamed law enforcement officers willfully violated the "Kansas Constitution 'Bill of Rights' sections 1, 3, 8, 10, 15, and 20, Kansas criminal statutes, and U.S. Constitution Amendments 1, 4, 5, 6, 10, and 14 and Federal Criminal Statutes."[14]  Plaintiff also asserts that Defendants "willfully committed felony perjury and treason of and upon their sworn oaths of office by their willful conducts."[15]

---

[13] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008).

[14] Complaint, Doc. 1-1, p. 2.

[15] Complaint, Doc. 1-1, p. 2.

Count 1 fails to meet the requirements of Rule 12(b)(6).  Plaintiff has not set forth any federal or state statute that Defendants allegedly violated.  Even if the court assumes Plaintiff is bringing a claim under 42 U.S.C. § 1983, Plaintiff's claim still fails because he has not identified the precise constitutional right that was allegedly infringed.[16]  Plaintiff generally asserts that Defendants violated certain amendments from the Kansas and United States Constitutions, but he does not specifically state what rights under these amendments were violated.   Neither Defendants nor the Court is required to guess what Plaintiff's claim is.  Because Count 1 does not set forth a "plausible" claim, this count must be dismissed.

### 2.      Criminal Statutes

Plaintiff appears to assert a private cause of action against Defendants for violation of federal and state criminal statutes under Counts 2, 4, and 5  Defendant asserts Count 2 against Defendant Judge Harvell for willful abuse of the legal process, alleging that Judge Harvell committed felony perjury and treason.  Plaintiff asserts Count 4 against all Defendants except Defendant Jane Doe 1.  Count 4 alleges an abuse of legal process claim and a variety of criminal assault and battery claims and false charge claims.  Plaintiff brings Count 5 against Defendant Jane Doe 1, who was the woman in the courtroom who allegedly overheard Plaintiff say he wanted to bomb the court.  Plaintiff asserts that Defendant Jane Doe 1 abused the legal process and violated Kansas and federal terror laws when she accused him of making that statement.

"Generally, criminal statutes, state or federal, do not create a private cause of action. Instead they are enacted to protect the public at large and provide a penal remedy for their

---

[16] *See McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011) ("The analysis in a 42 U.S.C. § 1983 case begins with the identification of the precise constitutional right allegedly infringed.").

violation."[17]  Plaintiff's complaint fails to direct the Court to any state or federal criminal statute that provides a civil remedy under this legal theory.  Instead, Plaintiff simply refers to "Kansas and Federal felony crimes" or "Federal and Kansas terror laws."[18]  Plaintiff's allegations are insufficient to state a claim for private right of recovery.  Therefore, the Court dismisses these claims.

### 3.      Tort Conversion

In Count 6, Plaintiff asserts that Defendants Simmons, Harvell, Boldt, Brokaw, and the three unnamed law enforcement officers committed "tort conversion of Kansas and U.S. constitutional rights."[19]  Plaintiff specifically alleges that Defendants willfully violated his rights in the Kansas Constitution Bill of Rights Sections 1, 3, 8, 10, 15, and 20, and U.S. Constitution Amendments 1, 4, 5, 6, 10, and 14.  This claim appears to mirror Count 1 and fails for the same reasons set forth above.

### 4.      FDCPA

In Count 7 of his complaint, Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA").  Specifically, Plaintiff alleges that Defendants were operating a " 'debt collecting scheme' " to collect money by threat, fear, intimidation, or force.[20]  The complaint does not specify the operative section that Defendants violated.  The only

---

[17] *Mondonedo v. Henderson*, 2012 WL 3245440, at *4 (D. Kan. Aug. 9, 2012) (citing *Kaw Nation v. Springer*, 341 F.3d 1186, 1186 (10th Cir. 2003)); *see also Cort v. Ash*, 422 U.S. 66, 80 (1975) (stating that a private right of action may not be inferred from a criminal prohibition).

[18] Complaint, Doc. 1-1, p. 3-4.

[19] Complaint, Doc. 1-1, p. 5.

[20] Complaint, Doc. 1-1, p. 5.

reference Plaintiff makes to the underlying statute is in the introductory paragraph of the complaint, where he refers to "15 U.S.C. (classified)."[21]

The FDCPA was enacted for the purpose of "eliminat[ing] abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[22]   A defendant may only be held liable for violating the FDCPA if that defendant meets the definition of a "debt collector."[23] Subject to exclusions, the FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[24]   Under this definition, there are two alternative predicates for obtaining "debt collector" status:  (1) engaging in debt collection as the principal purpose of the entity's business and (2) engaging in debt collection regularly.[25]

Plaintiff's complaint does not contain sufficient facts to support a claim under the FDCPA.  Plaintiff has not alleged any facts with regard to whether Defendants qualify as "debt collectors."  Therefore, Plaintiff's FDCPA claim fails.

---

[21] Complaint, Doc. 1-1, p. 1.

[22] 15 U.S.C. § 1692(e).

[23] *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

[24] 15 U.S.C. § 1692a(6)

[25] *Id.*

5.      **RICO**

In Count 8 of his complaint, Plaintiff asserts a civil RICO claim against Defendants Simmons, Harvell, Boldt, Brokaw, and the three unnamed male law enforcement officers.  This claim apparently arises out of the operation of the City of Merriam Municipal Court.  Plaintiff alleges that Defendants were operating a "debt collection scheme," that Defendants knowingly and willfully lied to people to extort money from them, and that such acts were carried out through a commerce scheme on behalf of the City of Merriam.[26]

To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must set forth (1) participation in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[27] "The Supreme Court has adopted the 'operation or management' test to determine whether a defendant has 'participated in the conduct' of the affairs of a RICO enterprise."[28]  For liability to exist under this test, the defendant "must have participated in the operation or management of the RICO enterprise."[29]  Furthermore, racketeering activity is commonly described as a "predicate act" consisting of the state and federal crimes identified in 18 U.S.C. § 1961(1).[30]  Racketeering claims alleging fraud must satisfy the heightened pleading standard of Rule 9(b).[31]

Plaintiff's complaint fails to allege the four elements of a RICO claim.  Nowhere in the complaint does Plaintiff allege what Defendants did to carry on the RICO enterprise.  Plaintiff

---

[26] Complaint, Doc. 1-1, p. 5.

[27] *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999).

[28] *Id.*

[29] *Id.*

[30] *Ferluga v. Eickhoff*, 408 F. Supp. 2d 1153, 1159 (D. Kan. 2006) (citing *United States v. Smith*, 413 F. 3d 1253, 1268-69 (10th Cir. 2005)).

[31] *Id.* (citing *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992)); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989).

also hasn't alleged a pattern of racketeering activity.  Plaintiff has not identified two or more predicate acts[32] committed by Defendants and certainly has not specifically pled any acts of fraudulent activity.  Therefore, Plaintiff's RICO claim is dismissed.

### 6. Conspiracy

In Counts 3 and 9 of his complaint, Plaintiff asserts conspiracy claims.  In Count 3, Plaintiff alleges that Defendants Simmons, Harvell, Boldt, Brokaw, and two unnamed law enforcement officers committed abuse of process by conspiracy.  Specifically, Plaintiff asserts that "Defendants had meetings.  Defendants had thoughts.  Defendants then plotted, then planned to abuse plaintiff's rights under constitutions and laws.  Defendants then carried out such plots and plans against plaintiff."[33]  In Count 9, Plaintiff asserts a conspiracy claim against Defendants based on Counts 7 and 8 of his complaint (violation of the FDCPA and Civil RICO claims).

Plaintiff's complaint does not specifically state whether his conspiracy claims are asserted under federal or state law.  The introductory paragraph of his complaint refers to 42 U.S.C. §§ 1983, 1985 and 1986, so the Court will address his claims under each of these statutes.

### a. § 1983

To recover under a § 1983 conspiracy, a plaintiff must plead and prove a conspiracy and a deprivation of a constitutional right.[34]  In this case, Plaintiff has done neither.  As discussed above, Plaintiff has not sufficiently alleged that Defendants deprived him of a constitutional

---

[32] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005) ("A pattern of racketeering activity must include commission of two predicate acts.").

[33] Complaint, Doc. 1-1 p. 3.

[34] *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

right.  Nor has he alleged sufficient facts showing an agreement and concerted action among Defendants.

To state a cause of action for conspiracy under § 1983, Plaintiff must "allege specific facts showing agreement and concerted action among [defendants]."[35]   Plaintiff must demonstrate "a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."[36]  A mere opportunity to confer and communicate is insufficient.[37]   Here, Plaintiff's complaint generally alleges that Defendants Simmons, Boldt, and Harvell spoke with each other in the courtroom before his trial.  He then alleges that Defendant Simmons spoke with Defendant Brokaw.  These general allegations fall short of those needed to state a claim for conspiracy.  They do not contain "enough facts to state a claim for relief that is plausible on its face."[38]   Therefore, the Court finds that Plaintiff has not stated a conspiracy claim under § 1983.

### b.        § 1985

Section 1985(2) contains four clauses that create four distinct causes of action.[39]  These are:

> A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or

---

[35] *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

[36] *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1252 (10th Cir. 2006) (quotation omitted).

[37] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1988).

[38] *Schneider*, 493 F.3d at 1177 (quotation omitted).

[39] *Wright v. No Skiter, Inc.*, 774 F.2d 422, 425 (10th Cir. 1985).   It is unlikely that Plaintiff is asserting a § 1985(3) claim because an essential element of that claim is racially discriminatory animus, and Plaintiff makes no allegations of such in his complaint.  *See Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004).

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.[40]

Clause A is aimed at conspiracies to discourage parties or witnesses from attending or testifying in federal court, and Clause B is aimed at conspiracies to injure a party or witness for having attended or testified in federal court.[41]  Plaintiff makes no allegations regarding any party or witness testifying in federal court.  His allegations only concern Merriam City Municipal Court. Therefore, he does not state a claim under Clauses A or B.

Clauses C and D require that the conspiracy be class-based.[42]  Plaintiff does not allege that he is a member of a class protected by § 1985 nor does he allege discriminatory animus. Accordingly, Plaintiff has not stated a claim under 42 U.S.C. § 1985(2).

### c.   § 1986

42 U.S.C. § 1986 provides for the recovery of damages when a person knows of a conspiracy under § 1985, has the power to prevent such conspiracy, and refuses to do so.[43]  A

---

[40] *Wright*, 774 F.2d at 425 (quotation omitted).

[41] *See Kush v. Rutledge*, 460 U.S. 719, 725 (1983) (stating that § 1985(2) has two parts and that the first part applies to the administration of justice in the federal system and the second part relates to "conspiracies to obstruct the course of justice in state courts"); *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

[42] *See Kush*, 460 U.S. at 725-26 (stating that a violation of the second part of § 1985(2) requires a showing that the conspirators intended to deprive the injured party of the equal protection of the laws); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").

[43] 42 U.S.C. § 1986.

§ 1986 claim is premised upon the existence of a valid § 1985 claim.[44]  Because Plaintiff has not stated a valid conspiracy claim under § 1985, Plaintiff has no cause of action under § 1986.

### 7.     State Law Tort Claims

In Counts 6, 10, 11, 12, 13, 14, 15, and 16, Plaintiff alleges state law tort claims against Defendants.  The Court, however, declines to exercise jurisdiction over these claims because all federal claims against Defendants have been dismissed.[45]  Accordingly, Plaintiff's tort claims against Defendants are also dismissed.

### 8.     Declaratory Judgment

In the Damages section of his Complaint, Plaintiff seeks an order "nullifying" any summons issued to him by the City and "expunging" any records of arrest or criminal charges against him.  The Court presumes that Plaintiff is seeking this relief under the Declaratory Judgment Act, which provides in relevant part:  "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[46]  The Supreme Court has held that this statute gives courts the power, but not the duty, to hear claims for declaratory judgment.[47]  In determining whether to exercise their discretion, district courts should consider the following factors:

---

[44] *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir. 1990).

[45] *See, e.g.*, 28 U.S.C. § 1367(c).

[46] 28 U.S.C. § 2201(a).

[47] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

-14-

"[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."[48]

Here, Plaintiff is essentially asking the Court to perform the functions of a state municipal court relative to his municipal court charges. In looking at the factors set forth above, this is not the type of case where the Court should exercise discretion to hear Plaintiff's claims under the Declaratory Judgment Act. A declaration from this Court would not settle the underlying municipal charges, would not serve a useful purpose in clarifying the legal relations at issue, is being requested to avoid the authority of the Municipal Court, and would increase friction between federal and state courts. In addition, Plaintiff has an alternative remedy in state court to appeal any municipal charge to the state district court or file a petition for expungement, both of which are allowed under state statute. For these reasons, the Court declines to exercise jurisdiction over Plaintiff's claim for declaratory relief.

## B.    Official Capacity Claims and Immunity

Besides arguing that Plaintiff's complaint fails to state a claim, Defendants assert two additional reasons why the Court should dismiss Plaintiff's claims. First, Defendants argue that Plaintiff's official capacity claims should be dismissed because of lack of policy or custom. Next, Defendants argue that Plaintiff's individual claims against Defendants Harvell and Boldt should be dismissed because they are entitled to absolute immunity and that Plaintiff's individual

---

[48] *Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Assoc.*, 685 F.3d 977, 980-81 (10th Cir. 2012) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

claims against Defendants Simmons, Brokaw, and the three unnamed law enforcement officers should be dismissed because they are entitled to qualified immunity.

### 1.    Official Capacity Claims

In his complaint, Plaintiff alleges that he brings this action "against each defendant in their official capacities in part and as each individual people in part . . ."  After looking at Plaintiff's complaint, the Court cannot discern against which individual Plaintiff is making official capacity claims or individual capacity claims or both.  Therefore, the Court assumes that Plaintiff is making both an official capacity and individual capacity claim against each Defendant.

### a.    Federal Claims

Plaintiff's claims against Defendants in their official capacities are equivalent to bringing those claims against the City of Merriam itself.  It is well established that an official capacity suit is another way of suing a governmental entity.[49]  In other words, "[a section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."[50]

In *Monell v. Department of Social Services of City of New York*,[51] the Supreme Court held that when an officer deprives a citizen of a constitutional right, a municipal or other local government body can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional "implements or executes a policy

---

[49] *See Layton v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, 512 F. App'x 861, 868 n.4 (10th Cir. 2013) (a "suit against [the Sheriff] in his official capacity as sheriff is the equivalent of a suit against [the] County") (quoting *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999)).

[50] *Watson v. City of Kan. City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).

[51] 436 U.S. 658 (1978).

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[52]   To hold a governing body liable under § 1983, the plaintiff must demonstrate "(1) that an officer deprived the plaintiff of a constitutional right, and (2) that the municipal or county policy or custom was the moving force behind the constitutional deprivation."[53]

Here, Plaintiff's complaint fails to allege that the moving force behind any of the Defendants' conduct was a City of Merriam policy or custom.   In fact, Plaintiff's complaint is devoid of any allegation that such policy or custom existed.   Therefore, Plaintiff's official capacity claims against Defendants fail.

### b.      State Law Claims

To the extent Plaintiff asserts official capacity claims against Defendants under state tort theories, these claims are to be treated as a suit against the municipal entity.[54]   These claims are dismissed, however, because the Court declines to exercise supplemental jurisdiction over them as discussed above.

### 2.      Individual Capacity Claims

### a.      Absolute Immunity

### 1.      Judge Harvell

Judges are immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction.[55]   A judge does not act in the clear absence of jurisdiction even if "the

---

[52] *Id.* at 690.

[53] *Cox v. Denning*, 2014 WL 4843951, at *13 (D. Kan. Sept. 29, 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 385-88 (1989)).

[54] *Thomas v. Cnty. Com'rs of Shawnee Cnty.*, 40 Kan. App. 2d 946, 964, 198 P.3d 182, 194 (2008) (citations omitted).

[55] *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)).

action he took was in error, was done maliciously, or was in excess of his authority."[56] Furthermore, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."[57]

The United States Supreme Court has articulated two factors to determine whether an act by a judge is a judicial act.[58] These factors are whether the act is a function normally performed by a judge and whether the parties dealt with the judge in his judicial capacity.[59] Here, both of these factors are satisfied. As set forth in Plaintiff's complaint, Judge Harvell's conduct consisted of presiding over hearings, making rulings on legal and evidentiary matters, and holding Plaintiff in contempt. These are acts normally performed by a judge. Furthermore, all of Plaintiff's communications with Judge Harvell occurred while Judge Harvell was acting in his judicial capacity. Therefore, judicial immunity applies to this case, and Judge Harvell must be dismissed from this suit.

## 2.  Elizabeth Boldt

Plaintiff's complaint alleges that Defendant Boldt was present in the Merriam Municipal Court on September 18, 2014, in her capacity as prosecutor. It further alleges that while Judge Harvell was hearing other matters and Plaintiff was analyzing his "documents and strategies," she had a conversation with Defendant Simmons and then went to Judge Harvell's chair to discuss Plaintiff's Motion to Dismiss. No further conduct of Defendant Boldt is alleged.

---

[56] *Stump*, 435 U.S. at 356-57.

[57] *Id*. at 359.

[58] *Id*. at 362.

[59] *Id*.

Courts apply a "functional approach" when determining whether a prosecutor is shielded from liability under § 1983 by absolute immunity.[60]  This approach looks to the nature of the function performed, not the identity of the actor who performed it.[61]  When a prosecutor performs "advocative" conduct, that is, the prosecutor "act[s] within the scope of his duties in initiating and pursuing a criminal prosecution," the prosecutor is immune from suit.[62] "Advocative" conduct includes that which is "intimately associated with the judicial phase of the criminal process."[63]  The Supreme Court has stated that a prosecutor's statements in the courtroom and in pleadings that are relevant to the subject matter of the proceedings are absolutely immune.[64]  Here, Boldt's alleged conduct was all performed within the scope of her duties in initiating and pursuing a criminal prosecution.  Therefore, she is entitled to absolute immunity as well.

### b.    Qualified Immunity

Defendants argue that Defendants Simmons, Brokaw, and the three unnamed law enforcement officers are entitled to qualified immunity to the extent Plaintiff asserts claims against them in their individual capacities.  The Supreme Court has recognized that public officials enjoy qualified immunity on § 1983 claims asserted against them in their individual capacities and that arise out of performance of their duties.[65]  When a defendant asserts a

---

[60] *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quotations omitted).

[61] *Id.*

[62] *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976).

[63] *Id.* at 430-31.

[64] *Id.* at 426 n.23.

[65] *Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974).

qualified immunity defense, a plaintiff must satisfy a two-pronged test to avoid dismissal.[66]   A plaintiff must establish (1) that the official violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the challenged conduct.[67]

Here, Defendants provide no argument in support of their assertion that Defendants Brokaw, Simmons, and the three unnamed law enforcement officers are entitled to qualified immunity.  Defendants simply state that Plaintiff has not alleged a constitutional violation and that even if Plaintiff did allege such a violation, the law was not clearly established at that time. Plaintiff also does not address Defendant's argument in his response.  However, the Court need not look further at this issue because it has already determined that Plaintiff has failed to state a claim under 42 U.S.C. § 1983.  Therefore, the Court declines to determine at this time whether Defendants Simmons, Brokaw, and the three unnamed law enforcement officers are entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Doc. 9) is **DENIED AS MOOT**.

---

[66] *Comprehensive Addiction Treatment Ctr. v. Leslea*, 552 F. App'x 812, 815 (10th Cir. 2014).

[67] *Id.; Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

**IT IS FURTHER ORDERED** that Plaintiff' Motion for Review of Magistrate's Orders

(Doc. 17) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 7th day of April, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE